**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION**

| | |
|---|---|
| EMW WOMEN'S SURGICAL CENTER, P.S.C., on behalf of itself, its staff, and its patients; ASHLEE BERGIN, M.D., M.P.H., on behalf of herself and her patients; and TANYA FRANKLIN, M.D., M.S.P.H., on behalf of herself and her patients,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>ANDREW G. BESHEAR, in his official capacity as Attorney General of the Commonwealth of Kentucky; SCOTT BRINKMAN, in his official capacity as interim Secretary of Kentucky's Cabinet for Health and Family Services; MICHAEL S. RODMAN, in his official capacity as Executive Director of the Kentucky Board of Medical Licensure; and THOMAS B. WINE, in his official capacity as Commonwealth's Attorney for the 30th Judicial Circuit of Kentucky,<br><br>　　　　　Defendants. | Case No.: 3:18-CV-224-JHM |

## **COMPLAINT**

Plaintiffs, by and through their undersigned attorneys, bring this complaint against the above-named Defendants, their employees, agents and successors in office, and in support thereof allege the following:

**I.　INTRODUCTION**

1.　This is a constitutional challenge to a profoundly harmful statute that is plainly unconstitutional under binding Supreme Court and Sixth Circuit authority, and that is inflicting acute and irreparable harm on Kentuckians each and every hour it remains in effect. On April 10, 2018, the Governor signed into law House Bill 454, 2018 Gen. Assemb., Reg. Sess. (Ky.

2018) (hereinafter "H.B. 454" or "the Act"), attached hereto as Exhibit A, which bans the safest and most commonly used method of abortion starting early in the second trimester, and the only method used in outpatient facilities after the earliest weeks of the second trimester, dilation and evacuation (or "D&E"). Because of the statute's unusual and extraordinarily disruptive emergency clause (the premise of which is incontrovertibly undermined by the Governor having held the bill for ten days before signing it), it took effect instantaneously. The result is severe: It has extinguished access to abortion in Kentucky for every woman at and after 15 weeks of pregnancy.

2. At this moment, Plaintiffs' patients are suffering medical, constitutional and irreparable harm as a result of being denied the ability to obtain an abortion at all. The Act has forced Plaintiffs to cancel the appointments of patients seeking time-sensitive and constitutionally protected health care, and will force them to continue turning patients away. That is why Plaintiffs bring this civil rights action, on behalf of themselves and their patients seeking abortions, under the U.S. Constitution and pursuant to 42 U.S.C. § 1983, to challenge the constitutionality of the Act and to seek immediate, emergent relief from this Court to enjoin its enforcement.

## II. JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over Plaintiffs' federal claims under 28 U.S.C. §§ 1331 and 1343.

4. Plaintiffs' action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202 and by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## III. PLAINTIFFS

6. Plaintiff EMW Women's Surgical Center, P.S.C. ("EMW"), a Kentucky corporation located in Jefferson County (Louisville), is the sole licensed abortion facility located in Kentucky. EMW has been providing women with reproductive health care including abortion since the 1980s. EMW sues on behalf of itself, its physicians and its patients.

7. Plaintiff Ashlee Bergin, M.D., M.P.H., is an experienced board-certified obstetrician-gynecologist who provides a range of reproductive health services, including abortions at EMW. The abortion services Dr. Bergin provides at EMW include D&E procedures banned by H.B. 454.

8. Plaintiff Tanya Franklin, M.D., M.S.P.H., is an experienced board-certified obstetrician-gynecologist who provides a range of reproductive health services, including abortions at EMW. The abortion services Dr. Franklin provides at EMW include D&E procedures banned by H.B. 454.

## IV. DEFENDANTS

9. Defendant Andrew G. Beshear is the Attorney General of the Commonwealth of Kentucky and, as such, is the Commonwealth's chief law enforcement officer. In his capacity as Attorney General, Defendant Beshear may initiate or participate in criminal prosecutions for violations of H.B. 454 at the request of, *inter alia*, the Governor, any court of the Commonwealth, or local officials. K.R.S. §§ 15.190, 15.200. Defendant Beshear is likewise charged with seeking injunctive relief against "abortion facilities" to "prevent violations of the provisions of KRS Chapter 216B regarding abortion facilities or the administrative regulations

promulgated in furtherance thereof." K.R.S. § 15.241. Those regulations include the requirement that all abortion facilities ensure "compliance with . . . state . . . laws," including H.B. 454. 902 K.A.R. 20:360, § 5(1)(a). Defendant Beshear is sued in his official capacity.

10. Defendant Scott Brinkman serves as the interim secretary of the Cabinet for Health and Family Services ("the Cabinet") – an agency of the Commonwealth of Kentucky with its principal place of business in Franklin County, Kentucky. In his capacity as interim secretary of the Cabinet, Defendant Brinkman is charged with, *inter alia*, oversight and licensing of abortion providers and the regulatory enforcement of those facilities. K.R.S. § 216B.0431(1); 902 K.A.R. 20:360, § 5(1)(a). The Cabinet's regulations include the requirement that all abortion facilities ensure "compliance with . . . state . . . laws," including H.B. 454. 902 K.A.R. 20:360, § 5(1)(a). Defendant Brinkman is sued in his official capacity.

11. Defendant Michael S. Rodman serves as Executive Director of the Kentucky Board of Medical Licensure ("KBML" or "the Board"), which is located in Jefferson County. Defendant Rodman and the Board possess authority to pursue disciplinary action up to and including license revocation against Kentucky physicians for violating H.B. 454, K.R.S. § 311.565; K.R.S. § 311.606. Defendant Rodman is sued in his official capacity.

12. Defendant Thomas B. Wine serves as Commonwealth's Attorney for the 30th Judicial Circuit of Kentucky. In this capacity, Defendant Wine has authority to enforce H.B. 454's criminal penalties in Jefferson County, where Plaintiffs are located. *See* K.R.S. § 15.725(1); K.R.S. § 23A.010(1). Defendant Wine is sued in his official capacity.

**V.     THE CHALLENGED STATUTE**

13. H.B. 454 criminalizes the performance of an abortion that "results in bodily dismemberment, crushing or human vivisection" unless fetal demise has already occurred.

Although these are not medical terms, the definition in the statute makes clear that it prohibits a procedure referred to in the medical profession as dilation and evacuation or D&E. D&E is the safest and most commonly used method of abortion starting early in the second trimester, and the only method used in outpatient facilities after the earliest weeks of the second trimester.

14. The ban applies to all procedures performed after eleven weeks post fertilization. Act, § 1(2)(b). That is equivalent to 13 weeks as physicians measure pregnancy, from the woman's last menstrual period, or 13 weeks LMP.

15. H.B. 454 defines "bodily dismemberment, crushing or human vivisection" as follows:

> A procedure in which a person, with the purpose of causing the death of an unborn child, dismembers the living unborn child and extracts portions, pieces, or limbs of the unborn child from the uterus through the use of clamps, grasping forceps, tongs, scissors, or a similar instrument that, through the convergence of two (2) rigid levers, slices, crushes, or grasps, or performs any combination of those actions on, any portion, piece, or limb of the unborn child's body to cut or separate the portion, piece, or limb from the body. The term includes a procedure that is used to cause the death of an unborn child and in which suction is subsequently used to extract portions, pieces, or limbs of the unborn child after the unborn child's death[.]

Act, § 1(1)(a).

16. The only exception to the ban is "in the case of medical emergency," Act, § 1(2)(b), defined as a condition that "so complicates the medical condition of a pregnant female as to necessitate the immediate abortion of her pregnancy to avert her death or for which a delay will create serious risk of substantial and irreversible impairment of a major bodily function," K.R.S. § 311.720 (9); *see* Act, § 1(1)(b).

17. Violation of the ban is a Class D felony, Act, § 2(18), subjecting a physician to punishment of up to five years' imprisonment, K.R.S. § 532.060(2)(d).

## VI.     FACTUAL ALLEGATIONS

Abortion in Kentucky and at EMW

18.     Legal abortion is one of the safest procedures in contemporary medical practice and is substantially safer for a woman than childbirth.

19.     Women seek abortions for a variety of psychological, emotional, medical, familial, economic and personal reasons.  In the second trimester, women seek abortion for the same complicated personal and medical reasons as in the first trimester, but often with added complexities.  These complexities include unforeseen circumstances, such as unexpected drastic changes to their medical or social situations; delay resulting from difficulties the woman experienced raising the necessary funds for the procedure and related expenses, such as travel and childcare; and diagnosis of a fetal or maternal health condition after the first trimester.

20.     EMW is the only outpatient abortion facility in the Commonwealth of Kentucky.

21.     EMW provides medication abortion through ten weeks LMP and surgical abortion up to twenty-one weeks and six days (21.6 weeks) LMP.

22.     EMW performs hundreds of procedures using the D&E method every year.

The Act's D&E Ban and its Impact

23.     H.B. 454 bans D&E, the safest and most common abortion method starting in the early second trimester, accounting for more than 95% of such abortions nationally.

24.     In the first trimester of pregnancy, there are two available abortion methods.  In a medication abortion, which is available only up to ten weeks, the patient ingests two medications to induce early miscarriage. In a suction abortion, which is available up to approximately 15 weeks, the clinician uses a suction device to aspirate (or empty) the patient's uterus.

25. Starting at approximately 15 weeks, Plaintiffs use a combination of suction and forceps or other instruments to remove the fetus, placenta, and uterine lining (in other words, all the products of conception) from the uterus, followed by additional suction to ensure the uterus is completely empty. Because the cervical opening is smaller than the fetus, separation or disarticulation of fetal tissue usually occurs as the physician brings the pregnancy through the cervix. The use of instruments, alone or in conjunction with suction, to empty the uterus in this manner is known as D&E.

26. D&E is safely performed as an outpatient procedure throughout the second trimester of pregnancy. The evacuation phase takes approximately 10 minutes.

27. Other than D&E, the only other medically-proven method available after the earliest weeks of the second trimester is induction abortion, where a physician uses medication to induce labor and delivery of a non-viable fetus. Induction of labor accounts for only about 5% of second-trimester procedures nationally. Induction abortions must be performed in a hospital or similar facility that has the capacity to admit and monitor a patient overnight. Induction abortions can last up to two or three days, are extremely expensive, and entail more pain, discomfort, and recovery time for the patient – similar to that of a woman giving birth – than the D&E procedure.

28. A hospital-based abortion (including an induction procedure) is available in Kentucky only in extremely rare circumstances; it is not a service that is available to most women.

29. Therefore, Kentucky women have essentially no other option but to obtain abortions in an outpatient facility, and starting early in the second trimester, D&E is the only outpatient method of abortion.

30. H.B. 454 would not impose criminal penalties for an abortion in which a physician – through a separate procedure – attempted, and succeeded in causing, fetal demise prior to the use of instruments, such as forceps, to empty the uterus.

31. Beginning at 18.0-20.0 weeks LMP, some physicians outside Kentucky attempt to induce fetal demise prior to starting an abortion procedure, generally in order to demonstrate compliance with a "partial-birth abortion ban." This usually entails an injection of a medication called digoxin, and it increases the length, complexity and risk of the abortion without any medical benefit to the patient.

32. Published data show that use of digoxin to attempt to induce demise increases risks of nausea, vomiting, infection, and extramural delivery (delivery outside a medical setting), with no medical benefit to the patient. In addition, digoxin injections are not possible for every patient due to anatomical characteristics or medical contraindications.

33. According to the American Congress of Obstetricians and Gynecologists, "[n]o evidence currently supports the use of induced fetal demise to increase the safety of second trimester medical or surgical abortion." Am. Coll. Obstetricians & Gynecologists Second Trimester Practice Bulletin (No. 135, June 2013).

34. Digoxin can take several hours if not longer to cause demise. As a result, the use of digoxin in the early second trimester would turn a one-day abortion procedure into a two-day procedure. This would unnecessarily prolong the procedure, require an additional, unnecessary trip to the clinic, and burden patients, many of whom are poor or low-income.

35. Even then, digoxin simply fails to cause demise in approximately 5-10% of cases. There are no published studies evaluating the safety, efficacy, or dosage of a second injection of digoxin, if the first attempt is unsuccessful.

36. There are virtually no published studies addressing the safety of digoxin prior to 18.0 weeks LMP. To attempt demise at this stage would impose unknown risks, have uncertain efficacy, and bring no medical benefit to the patient.

37. Even later in the second trimester, such attempts to cause fetal demise are a minority practice. EMW is the only outpatient facility offering D&E services in Kentucky, and physicians providing care there, including Plaintiffs, do not use digoxin at any stage in pregnancy. Indeed, many physicians, including Plaintiffs Dr. Bergin and Dr. Franklin, are not trained to use it.

38. There are no other safe and available methods of attempting to cause fetal demise in the outpatient setting. An injection of KCl (potassium chloride) directly into the fetal heart does effectively cause demise, but requires years of specialized training and hospital-grade equipment. That level of training and equipment are necessary because inadvertent injection of KCl into a patient's blood stream can put the patient into cardiac arrest.

39. Umbilical cord transection, where a clinician attempts to grasp and divide the umbilical cord to cause demise, exposes the patient to increased risk of uterine perforation, cervical injury, and bleeding, and would prolong the D&E, also increasing risks. It can also be impossible to perform because the physician cannot locate the cord. Additionally, because in many cases it is difficult, if not impossible, to grasp the cord without also grasping fetal tissue, attempts at cord transection would violate, rather than circumvent, the D&E ban.

40. Therefore, H.B. 454 imposes a criminal ban on Plaintiffs' second-trimester abortion practice starting at 15 weeks.

## VII. IRREPARABLE HARM

41. Under, H.B. 454, which took immediate effect upon signing, Kentuckians in need of abortion services at and after 15 weeks LMP are unable to access care. Those women who can attempt to arrange to travel and access care out of state do so; others remain pregnant against their will.

42. For many women, the increased travel is extremely difficult, and in many cases that added burden makes it impossible to obtain an abortion. It is causing delay, forcing some women to seek abortions later in pregnancy when the procedure is more risky and more expensive, and it is preventing other women from obtaining an abortion at all. Some women who are unable to surmount the travel burdens will resort to unsafe self-abortion methods, thereby jeopardizing their lives, their health, and their family's welfare.

43. Under H.B. 454, Plaintiffs' patients are suffering irreparable harm. H.B. 454 has eliminated access to pre-viability abortion after the earliest weeks of the second trimester, harming women's health and forcing them to remain pregnant against their will.

44. Plaintiffs' patients are also suffering the irreparable harm of the resulting violation of their constitutional rights.

45. Plaintiffs' patients have no adequate remedy at law.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

**(Fourteenth Amendment Right to Privacy)**

46. The allegations of paragraphs 1 through 45 are incorporated as though fully set forth herein.

47. By banning the safest and most common method of abortion starting in the early second trimester, the Act violates Plaintiffs' patients' right to liberty and privacy as guaranteed by the due process clause of the Fourteenth Amendment to the U.S. Constitution.

## SECOND CLAIM FOR RELIEF

### (Fourteenth Amendment Right to Bodily Integrity)

48. The allegations of paragraphs 1 through 45 are incorporated as through fully set forth herein.

49. The Act violates Plaintiffs' patients' right to bodily integrity guaranteed by the due process clause of the Fourteenth Amendment to the U.S. Constitution.

## REQUEST FOR RELIEF

Plaintiffs respectfully request the Court:

1. Declare H.B. 454 unconstitutional and unenforceable.

2. Enjoin Defendants, their employees, agents, and successors in office from enforcing H.B. 454.

3. Grant Plaintiffs reasonable attorney's fees, costs, and expenses pursuant to 42 U.S.C. § 1988; and

4. Grant such other and further relief as this Court may deem just, proper, and equitable.

Dated: April 10, 2018

                Respectfully submitted,

                s/Amy D. Cubbage
                Amy D. Cubbage, Interim Legal Director
                ACLU of Kentucky
                401 West Main Street, Suite 1200
                Louisville, Kentucky 40202

(502) 583-7400
acubbage@ackersonlegal.com

Heather L. Gatnarek
Legal Fellow
ACLU of Kentucky
315 Guthrie Street, Suite 300
Louisville, KY 40202
(502) 581-9746
heather@aclu-ky.org

Andrew Beck*
Talcott Camp*
Elizabeth Watson*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2633
abeck@aclu.org
tcamp@aclu.org
ewatson@aclu.org
*pro hac vice motions forthcoming*

*Counsel for Plaintiffs*