# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| EMW WOMEN'S SURGICAL CENTER, P.S.C., *et al*., | |
| Plaintiffs, | |
| v. | Case No.:  3:18-cv-00224-JHM |
| ANDREW G. BESHEAR *et al*., | |
| Defendants. | |

## DECLARATION OF ASHLEE BERGIN, M.D., M.P.H.

Ashlee Bergin, M.D., M.P.H., declares and states as follows:

1.       I am a board-certified obstetrician-gynecologist (OB/GYN) licensed to practice in Kentucky and one of the named plaintiffs in the above captioned lawsuit.  I submit this declaration in support of Plaintiffs' motion for a temporary restraining order and/or preliminary injunction.

2.       I graduated from Reed College, in Oregon, in 1999 and from George Washington University School of Medicine, in Washington, D.C., in 2006; completed my residency in OB/GYN at the University of Chicago, in Illinois, in 2010; and completed a family planning fellowship at the University of Illinois College of Medicine at Chicago, in 2015.  I also earned a Masters of Public Health from the University of Illinois at Chicago.  I am a member of the Association of Reproductive Health Professionals, a fellow of the American Congress of Obstetricians and Gynecologists and a Junior Fellow of the Society of Family Planning.  A copy of my curriculum vitae is attached.  As a Plaintiff in this case, I am challenging H.B. 454 on behalf of myself and my patients.

1

3.     I am currently an Assistant Professor and the Assistant Director of the Ryan

Residency Program in the Department of Obstetrics, Gynecology and Women's Health at the

University of Louisville School of Medicine.  I am one of the physicians who provides abortion

care at Plaintiff EMW Women's Surgical Center, P.S.C., ("EMW") at 136 W. Market Street in

Louisville, Kentucky.  I am also an officer and member of the American Congress of

Obstetricians and Gynecologists' Kentucky Section.  I am participating in this action as an

individual and not on behalf of any institution or association.

4.     As an OB/GYN, I provide the full spectrum of obstetric and gynecological care

including inpatient and outpatient care, surgery, labor and delivery, miscarriage management,

abortion, and contraception.  I am dedicated to providing high-quality, patient-centered health

care to all of my patients, including those who decide to terminate their pregnancies.  I am

challenging this law because it is forcing me to violate not only my medical and ethical

obligations as a physician, but my personal obligation to ensure that those who decide to

terminate their pregnancies can obtain safe, legal and compassionate abortion care.

5.     I have been providing reproductive health services, including abortion care, at

EMW for three years.  EMW is the only outpatient abortion clinic in the Commonwealth of

Kentucky.

6.     Because of our dedication to serving women in low income and underserved

communities, EMW has very limited resources.

7.     The information provided in this declaration is based on my personal knowledge.

The opinions in this declaration are my expert opinions as an OB/GYN and an abortion provider.

My expert opinions are based on my education, training, professional experience, and review of

relevant medical literature.  All of my opinions in this declaration are expressed to a reasonable degree of medical certainty.

**Abortion Procedures at EMW**

8.      Legal abortion is one of the safest medical procedures in the United States, and is substantially safer for a woman than childbirth.  A woman's risk of death associated with childbirth is approximately 10-14 times higher than her risk of death associated with abortion.

9.      At EMW, I perform abortions by either medical or surgical means.  I provide medication abortions up to 70 days or 10.0 weeks (10 weeks and 0 days), as measured from a patient's last menstrual period ("LMP").  I perform surgical abortions up to 21.6 weeks LMP. Clinicians commonly refer to the abortions they perform with instruments as "surgical," but these abortions involve no incision into the patient's skin and are not what is typically thought of as "surgery."

10.      During the first trimester, when the vast majority of abortions take place, there are two methods of abortion.  First, a patient may terminate a pregnancy through medication abortion, available through the first ten weeks of the first trimester.  For medication abortion, a patient takes two drugs: first mifepristone and then, the next day, misoprostol.  Within 24-48 hours of taking the second drug, she will pass the products of conception in a process identical to an early miscarriage, usually in her home.

11.      The second abortion method available in the first trimester is called suction or vacuum aspiration abortion.  An aspiration abortion can be performed up until approximately 15 weeks LMP.  To perform an aspiration abortion, the clinician uses gentle suction to empty the contents of the uterus.

3

12.     Starting early in the second trimester, when suction alone is no longer sufficient, I perform abortions using a method called dilation and evacuation, or D&E.  As the name suggests, there are two steps to a D&E procedure: dilation of the cervix and then evacuation of the uterus.  Dilation—which may be accomplished on the same day as the procedure earlier in the second trimester and which is accomplished overnight for procedures after that—is achieved with osmotic dilators, which are thin sticks of material that swell when they absorb moisture; when placed in the patient's cervix, they absorb moisture from the patient's body, expand slowly, and thus dilate the cervix.  It is important to dilate the cervix only enough to allow safe passage of instruments in order to preserve it for future pregnancies.  Once the cervix is dilated, I use instruments, usually forceps, to remove the fetus and other contents of the uterus.  Because the fetus is larger than the opening of the cervix, separation of fetal tissue generally occurs as it is withdrawn through the cervix.

13.     Although H.B. 454 does not use proper medical terminology, its prohibition of "dismemberment" bars the use of instruments to empty the uterus in a manner that results in the separation of fetal tissues.  This is how a standard D&E is performed.

14.     I understand that H.B. 454 does not apply when suction causes fetal demise *before* the use of instruments such as forceps to empty the uterus.  But while suction alone may typically cause fetal demise before approximately 15 weeks LMP, it does not reliably do so after that point.  After approximately 15 weeks, I know that suction cannot be relied upon to cause demise before I need to use forceps to safely complete an abortion.  And certainly by 16 weeks LMP, I must use forceps to evacuate the uterus before fetal demise has occurred.

15.     Starting at approximately 15 weeks, D&E is the fastest, safest, and most common method of abortion.

4

16.     D&E is the only method we can use at EMW.  The only alternative method of second-trimester abortion is induction of labor, or induction abortion.  Induction abortions must be performed in a hospital or hospital-like facility, and cannot be performed in an outpatient facility like EMW.  Moreover, because they require a woman to go through labor and must be performed in a hospital (or hospital-like setting), induction abortions are longer, more painful, more expensive and have the potential for more complications than D&Es.  Induction abortions are rarely performed at Kentucky hospitals and are available only when there is a lethal or very serious fetal anomaly or when the life of the patient is at risk.

17.     Thus H.B. 454 has virtually eliminated abortion in Kentucky at and after 15.0 weeks LMP.  I will not risk my patients' health and safety, let alone subject myself to criminal prosecution and the loss of my medical license, by starting a procedure without knowing that I can safely and lawfully complete it.

18.     I am aware that, starting at 18.0 to 20.0 weeks, some physicians (outside Kentucky) attempt to induce fetal demise before starting an abortion by using an injection of a medication called digoxin.  I know that digoxin is not 100% successful at causing fetal demise and so cannot be used to work around a D&E ban because a physician cannot start a procedure she cannot complete.  Moreover, I was never trained in this procedure and have never utilized it. I would not want to attempt to perform medical procedures that were not encompassed in my extensive medical training or my years of experience providing safe abortion care, solely to comply with a law that has nothing to do with patient safety.  Even if I had been trained in using digoxin, it would not be best practice to use it because it poses risks with no medical benefit and is not always effective in causing demise.

19.     Further, I am not aware of any procedure that can guarantee fetal demise, safely and without fail, prior to the evacuation phase of a D&E procedure, as would be required to circumvent the D&E ban.  Potassium chloride is used by some maternal-fetal-medicine specialists to cause fetal demise (usually in the case of pregnancy multiples), but it is extremely challenging to administer and is well outside my training and experience.  Some physicians attempt to transect the umbilical cord to induce fetal demise.  However, it is not always possible to locate and transect the cord, and it is sometimes impossible to do so without also transecting fetal tissue (and violating the law).  Cord transection is not a realistic, achievable means of ensuring fetal demise in all cases.  I cannot and would not rely upon it to work around the law, which requires that the doctor *succeed* in inducing fetal demise before a D&E—something that simply cannot be guaranteed.

20.     It is my ethical obligation as a physician to take the best possible care of my patients and I am unwilling to add to the complexity and risk of an abortion without providing any benefit to my patient.

**IMPACT OF H.B. 454 ON MY PATIENTS**

21.     Hundreds of women come to EMW for D&E abortions every year.  This law has already forced us to turn patients away – to deny them appointments or cancel the state mandated pre-abortion counseling session.  Given the time-sensitive nature of the care we provide, we believed it would have been unethical to continue scheduling procedures, knowing that by the time the patient arrived for her appointment, the law could have taken effect and banned the care she sought.  Upon hearing that they cannot receive care at EMW because of this law, people seeking care are distraught and sometimes unable to keep from crying.  Every day this law remains in effect, it forces us to deny care to more patients in need of care.

22.     Patients who come to EMW for D&E depend on the care we provide.  While patients seek care in the second trimester for the same complicated, personal and medical reasons women seek care in the first trimester (including the need to care for children they already have), there are often additional complexities, such as unforeseen circumstances or unavoidable delay in obtaining care.

23.     Some patients have experienced unexpected changes in their medical or social situations that have led them to decide to terminate their pregnancies.  For example, a patient may have been diagnosed with preeclampsia that is quickly progressing and where continuing the pregnancy might put the patient's health at risk.  Other patients may have initially intended to carry the pregnancy to term, only to suffer drastic changes to their social situations, such as the loss of a partner or job that provided essential economic support to the family.  Still others may not even have discovered they were pregnant until they were already in the second trimester.

24.     Many of my patients at EMW are poor or low income and have experienced unwanted delay in accessing care because of the time they need to gather money to pay for the procedure and for associated costs, including travel and childcare.  Because EMW is the only outpatient abortion clinic in Kentucky, my patients travel from all across the state, and many have to travel significant distances to reach us.

25.     Other women seeking second-trimester abortion care are patients with wanted pregnancies who have found out that the fetus has a lethal or near-lethal anomaly, which typically cannot be diagnosed until the second trimester.  For example, I recently had a patient who, despite prenatal care, only discovered in the second trimester that the fetus had an extremely poor prognosis due to several anomalies.  Had this case arisen after the law took effect, I would have been prevented from caring for this patient.  If the law remains in effect,

7

then these women and families, who are already deeply suffering, would have no choice but to leave the state to get the care they need—if they can get it at all.

26.     As long as H.B. 454 remains in effect, and forces us to turn patients away, some will be unable to raise the additional funds to travel to another state for care.  Reaching the nearest out-of-state D&E providers is possible only for patients who can manage hundreds of additional miles of travel.

27.     Even if some of my patients could leave Kentucky to obtain an abortion in another state, making such arrangements is complicated and results in delayed access to care. Although abortion is extremely safe, and safer than remaining pregnant and giving birth, delay increases risks by forcing the patient to remain pregnant, which is risky itself, and by necessitating a procedure later in pregnancy, when the complication rate is greater.

28.     Some patients we are turning away may be so delayed that their pregnancies advance past the point at which they can receive care at all.

26.     Every day that this law remains in effect, it forces women who seek my care to remain pregnant against their will.  It will force some of them to give birth, likewise against their will.  My patients are suffering and facing serious medical, social, economic, emotional, and psychological consequences—all of which are irreparable.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on April 11, 2018 in Louisville, Kentucky..

_____

Ashlee Bergin, M.D., M.P.H.

# Ashlee Bergin, M.D., M.P.H.



---

## Education

Family Planning Fellowship, University of Illinois at Chicago, Chicago, IL — 2013-2015

M.P.H., University of Illinois at Chicago School of Public Health, Chicago, IL — 2013-2015

Obstetrics and Gynecology Residency, University of Chicago Hospitals, Chicago, IL — 2006-2010

M.D., The George Washington University School of Medicine, Washington, D.C. — 2002-2006

B.A. in Biology, Reed College, Portland, OR — 1995-1999

## Current Position

Assistant Director, Ryan Residency Training Program
Department of Obstetrics, Gynecology, & Women's Health
University of Louisville
Louisville, KY — 2015-present

## Academic Appointments

Assistant Professor
Department of Obstetrics, Gynecology, & Women's Health
University of Louisville
Louisville, KY — 2015-present

## Other Positions and Employment

Staff Obstetrician/Gynecologist
Little Company of Mary Hospital
Evergreen Park, IL — 2010-2013

Embryologist, IVF Laboratory Technician
George Washington University Medical Faculty Associates
Washington, D.C. — 2000-2002

Laboratory Technician
Gamma-A Technologies, Inc.
Herndon, VA — 1999-2000

## Certification and Licensure

| | |
|---|---|
| Diplomate, American Board of Obstetrics and Gynecology | 2012-present |
| Kentucky Medical License | 2015-present |
| Illinois Medical License | 2009-present |
| DEA Registration | 2009-present |

## Professional Memberships and Activities

| | |
|---|---|
| Vice Chair, Kentucky Section, American Congress of Obstetricians and Gynecologists | 2017-present |
| Secretary, Kentucky Section, American Congress of Obstetricians and Gynecologists | 2015-2017 |
| Elected Fellow, American Congress of Obstetricians and Gynecologists | 2013-present |
| Junior Fellow in Practice for District VI, American Congress of Obstetricians and Gynecologists<br>    • Group leader for Mentorship Task Force | 2010-2012 |
| Junior Fellow, American Congress of Obstetricians and Gynecologists | 2006-2012 |
| Member, European Society of Contraception and Reproductive Health | 2014-present |
| Junior Fellow, Society of Family Planning | 2013-present |
| Member, Association of Reproductive Health Professionals | 2008-present |
| Fellow, Leadership Training Academy, Physicians for Reproductive Health | 2014-2015 |
| Student Teacher, MSII Physical Diagnosis Class | 2004-2005 |
| President, Beaumont Research Society | 2004-2005 |

## Honors and Awards

| | |
|---|---|
| Chicago Lying-In Hospital Excellence in Student Teaching Award | 2007 |
| Alpha Omega Alpha National Medical Honor Society | 2006 |
| President, Kane-King-Dodek Obstetrical Honor Society | 2006 |
| Rachel Morris Dominick Award in Obstetrics and Gynecology | 2006 |
| Recipient, Charles Iber Memorial Scholarship | 2003 |
| Reed College Presidential Commendation for Academic Excellence | 1998-1999 |

## Committee Assignments and Administrative Services

| | |
|---|---|
| Member, Residency Program Evaluation Committee, University of Illinois at Chicago Hospital | 2014-2015 |
| Member, Perinatal Practice Committee, Little Company of Mary Hospital | 2010-2013 |

| | |
|---|---|
| Resident Member, University of Chicago Hospitals Graduate Medical Education Committee | 2009-2010 |

## Educational Activities

| | |
|---|---|
| Presenter, Manual Vacuum Aspiration Workshop, University of Louisville<br>• For medical students | 2017 |
| Lecturer, OB/GYN Grand Rounds, Physicians as Advocates, University of Kentucky | 2016 |
| Medical Student Educational Tract Project Advisor, University of Louisville | 2016-present |
| Resident Educator/Supervisor, Family Planning Clinic, University of Louisville | 2015-present |
| Resident Educator/Supervisor, EMW Women's Surgical Center, Louisville, KY | 2015-present |
| Resident Research Advisor, University of Louisville | 2015-present |
| Lecturer, OB/GYN Grand Rounds, The Interpregnancy Interval, University of Louisville | 2016 |
| Lecturer, First and Second Trimester Abortion, University of Louisville<br>• For medical students in their OB/GYN clerkship | 2016-present |
| Presenter, Manual Vacuum Aspiration Workshop, University of Louisville<br>• For OB/GYN residents | 2015-present |
| Presenter, Professionalism Training Workshop, University of Louisville<br>• For incoming interns | 2016 |
| Presenter, Sterilization Workshop, University of Louisville<br>• For OB/GYN residents | 2016 |
| Presenter, Contraception Workshop, University of Louisville<br>• For OB/GYN residents | 2015 |
| Lecturer, First Trimester Abortion, TEACH Program, Loyola University Department of Obstetrics and Gynecology<br>• For OB/GYN residents | 2015 |
| Presenter, Professionalism Training Workshop, Chicago College of Osteopathic Medicine<br>• For OB/GYN residents and medical students in their OB/GYN clerkship | 2015 |
| Lecturer, First and Second Trimester Abortion, Chicago College of Osteopathic Medicine<br>• For OB/GYN residents and medical students in their OB/GYN clerkship | 2015 |
| Lecturer, OB/GYN Grand Rounds, The Interpregnancy Interval, University of Illinois at Chicago | 2014 |
| Lecturer, First and Second Trimester Abortion Options, University of Illinois Chicago College of Nursing<br>• For Advanced Practice Nursing students in Health Care of Women I class | 2014 |
| Lecturer, Contraception, University of Illinois at Chicago<br>• For medical students in their OB/GYN clerkship | 2013-2015 |

| | |
|---|---|
| Lecturer, Family Planning Considerations, Medical Council of Guyana, Georgetown, Guyana<br>• For physician quarterly continuing medical education | 2014 |
| Lecturer, OB/GYN Grand Rounds, Ectopic Pregnancy, Georgetown Public Hospital, Georgetown, Guyana<br>• For OB/GYN residents and General Medical Officers | 2014 |
| Assistant Course Director, Safe Abortion Training/IPAS MVA Training, Georgetown Public Hospital, Georgetown, Guyana<br>• For OB/GYN physicians and OB/GYN residents | 2014 |
| Lecturer, Contraception, Georgetown Public Hospital, Georgetown, Guyana<br>• For OB/GYN residents and General Medical Officers | 2014 |
| Lecturer, Basic Ultrasound, Georgetown Public Hospital, Georgetown, Guyana<br>• For OB/GYN residents and General Medical Officers | 2014 |
| Lecturer, Termination of Pregnancy, Georgetown Public Hospital, Georgetown, Guyana<br>• For OB/GYN residents and General Medical Officers | 2014 |
| Lecturer, Basic Ultrasound, University of Illinois at Chicago<br>• For OB/GYN interns | 2013-2014 |
| Lecturer, Contraception, Chicago College of Osteopathic Medicine<br>• For OB/GYN residents and rotating medical students | 2014 |
| Lecturer, Ectopic Pregnancy, University of Illinois at Chicago<br>• For OB/GYN interns | 2013 |
| Lecturer, Estrogen-Containing Contraception, TEACH Program, Loyola University Department of Obstetrics and Gynecology | 2013 |
| Lecturer, Options for Abortion and Early Pregnancy Failure in the First Trimester, Chicago College of Osteopathic Medicine<br>• For OB/GYN residents and rotating medical students | 2011 |
| Lecturer, OB/GYN Grand Rounds, Birth Spacing: How Important is it?, University of Chicago Hospitals | 2010 |

## Grants and Contract Awards                                           7/2014-6/2015

**Past Grant**
Family Planning Fellowship Research: Providers, Patients, and the
Interpregnancy Interval: Knowledge, Attitudes, and Practices
Funded by the Society of Family Planning, Grant #  SFPRF14-25
Award Total $69,621 (for direct costs only)
Primary Investigator (6 person months)

## Publications

1. Ruben LN, Johnson RO, **Bergin A**, Clothier RH. Apoptosis and the Cell Cycle in  Xenopus: PMA and MPMA Exposure of Splenocytes. Apoptosis 2000; 5:225-33.

2. Dayal MB, Gindoff P, Dubey A, Spitzer TL, **Bergin A**, Peak D, Frankfurter D. Does ethnicity influence in vitro fertilization (IVF) outcomes? Fertility & Sterility 2009; 91:2414-8.

3.  **Bergin A**, Whitaker AK, Terplan M, Gilliam M. Failure to return for intrauterine device insertion after initial clinic visit. Abstract. Contraception 2009; 80:217.

4.  **Bergin A**, Tristan S, Terplan M, Gilliam ML, Whitaker AK. A missed opportunity for care: Two-visit IUD insertion protocols inhibit placement. Contraception 2012; 86: 694-7.

5.  **Bergin A,** Rankin K, Stumbras K, Handler A, Haider S. Prenatal Patient Knowledge of the Interpregnancy Interval. Abstract. Obstetrics & Gynecology 2017; 129, 5 (Suppl): 18S.

## Presentations

### Posters

**Bergin A**, Whitaker AK, Terplan M, Gilliam M. Failure to return for intrauterine device insertion after initial clinic visit. Presented at Reproductive Health, Los Angeles, CA, September 30-October 3, 2009.

**Bergin A,** Rankin K, Stumbras K, Handler A, Haider S. Prenatal Patient Knowledge of the Interpregnancy Interval. Presented at the 65th Annual Clinical and Scientific Meeting of the American College of Obstetricians and Gynecologists, San Diego, CA, May 6-9, 2017.